Willie V. Smith and John Smith were married prior to August 23, 1924, and lived together as man and wife until his death in 1943. On October 23, 1924, Willie V. Smith entered into a contract with Mrs. *Page 90 
J.B. Atkins, Sr., to purchase lot 18, block C of the Pine Grove Addition to the City of Shreveport, Louisiana, for the sum of $399, payable $1 per week in advance until paid. Mrs. Atkins agreed to make a deed to the lot to Willie V. Smith only when it had been entirely paid for, which has never happened and no deed was ever recorded. The contract to sell was not recorded and has now been lost and is not in the record. Possession of the lot was taken by Willie V. Smith and her husband, John Smith, a residence erected thereon, and they occupied this house as their home.
In July, 1940, Mrs. Atkins entered suit against Willie V. Smith alleging that under said contract to sell she owed $128 on the principal sum and $554.22 interest. Mrs. Atkins also alleged she had paid taxes on said property in the amount of $139, on which amount there was $59.71 interest due. She prayed for judgment against Willie V. Smith and for recognition of her vendor's lien and privilege on the lot and improvements and that they be sold to satisfy her claim, amounting to $881.04. No appearance was made by Willie V. Smith and judgment by default was rendered as prayed for on September 28, 1940. In August, 1941, Willie V. Smith perfected a devolutive appeal to this Court.
On March 28, 1941 John Smith filed a petition of third opposition in which he alleged: "That your petitioner is the owner of a house built by him with his own funds in 1927 on Lot 18, Block C of the Pine Grove Subdivision of the City of Shreveport. Said house being constructed a good many years ago on the said lot with funds belonging to your petitioner at a cost to him of $1825.00, with the full consent and knowledge of the owner of said lot, Mrs. J.B. Atkins, Sr., the plaintiff in this suit, and that your petitioner is the head of a family and has been occupying this house as a homestead every since he built it."
John Smith also alleged that on March 31, 1941, the lot and house he erected thereon was seized under a fi. fa. issued under the default judgment rendered against Willie V. Smith and had been advertised for sale to satisfy said judgment; that he had filed an affidavit of ownership of the house with the sheriff, but it had not been released from seizure. Smith also alleged that no property of Willie V. Smith had been seized since title to the lot had never passed from Mrs. Atkins, and that the seized property consisted of a lot owned by Mrs. Atkins and the improvements owned by him. He prayed for damages of $500 as fee for his attorney in bringing this third opposition and for judgment against Mrs. Atkins in the sum of $1,825, the alleged cost of the improvements, or, in the alternative, for judgment ordering the house released from seizure and that he be given a reasonable time in which to remove it from the lot. Mrs. Atkins filed exceptions of no cause and no right of action to the petition of third opponent.
On May 13, 1941, third opponent filed a supplemental petition in which he alleged he had inadvertently and erroneously prayed for a judgment in the amount of $1,825 against Mrs. Atkins when he had only intended for that amount to be paid him out of the proceeds of the sale of the property by preference and priority and amended his petition in that respect. The lower Court sustained the exception of no cause of action, and on application for a rehearing reversed itself, basing its reversal on the allegation in plaintiff's petition that he built the house with the consent of Mrs. Atkins and with the understanding he could remove it from the premises at any time he wished.
Third opponent then filed a second supplemental petition in which he prayed for the proceeds of the sale of the property to be held by the sheriff until the final determination of the case and he prayed, in the alternative, if the Court should find he was not entitled to be paid by preference and priority out of the proceeds, that he have judgment against Mrs. Atkins for the value of the improvements, to-wit, $1,825 and $500 as attorney's fees.
Mrs. Atkins answered the original and supplemental petitions by denying each and every allegation made therein and alleged that the house constructed on the lot was with funds belonging to the community existing between Willie V. Smith and John Smith and that the house is immovable property and subject to her vendor's lien, and she further alleged that John Smith actually signed the contract to sell, representing himself to be Willie V. Smith and made payments on the contract, and that he at all times recognized the contract to sell as a legal and binding obligation of the community existing between him and Willie V. Smith; and that John Smith was, therefore, estopped to deny it to be a community obligation. She denied ever giving John Smith the right to remove the house *Page 91 
from the lot. She further alleged that John Smith had full knowledge of the suit against his wife on the contract to sell and made no appearance, and is now estopped to question her rights thereunder; that the property was sold in globo without a separate appraisement of the house and lot and without any request for such appraisement; and that she acquired the house and lot at that sale for a price of $800. Mrs. Atkins further prayed that the demands of third opponent be dismissed at his costs.
[1] John Smith excepted to the answer filed by Mrs. Atkins and prayed that certain parts of it be stricken from the pleading. Since it is well settled that a motion to strike is not recognized in our practice, it is useless to discuss this question. John Smith then filed a rule for judgment on the face of the pleadings, which was overruled by the lower Court and is not urged here. Numerous other pleadings were filed by attorneys for both litigants, however, since some of them were dismissed voluntarily and the others are no longer issues in the case, we refrain from stating their contents.
The evidence offered is very brief. The attorney for John Smith admitted there was no separate appraisement made of the house. There was no evidence offered to show an agreement by which John Smith was given permission to remove the house from the lot and no evidence offered to show that the contract to buy was paid for with separate funds by Willie V. Smith or that the house was built with separate funds of John Smith. There was an attempt made to show the value of the house, which evidence was not allowed by the lower Court for the reason it gave that John Smith's rights were relegated to the proceeds of the sale, and since there was no separate appraisal had or asked for, his rights to the proceeds of the sale of the house and lot in globo were lost.
The lower Court's opinion on the merits, after stating the issues, is as follows:
"On the trial of the merits, plaintiff objected to any evidence in the case for the reason that the property claimed by Smith had been sold in globo with the lot, and even if Smith was entitled to be paid the amount which the house brought, it was impossible to determine that amount because John Smith had not obtained an order for a separate appraisement of the property. After it was disclosed that no order for a separate appraisement had been obtained and none made (although one of the appraisers testified to the effect that he always considered the value of the improvements separate from the land in arriving at a value of the whole) — and it being admitted that the appraisement of the property by the two appraisers on which the sale was made was a globo appraisement, the Court sustained the exceptions and dismissed the intervention of John Smith (and plaintiff dismissed as in case of non-suit her reconventional demand against John Smith).
"The Court then considered and has since reconsidered the matter and is of the opinion that his ruling was correct for the following reasons:
"First, we think that the purchase of the lot fell into the community between Smith and his wife, Willie, and that the improvements placed thereon became a part of the lot, and that our opinion, sustaining the exception of no cause of action, originally was correct but if not, then the fact that plaintiff originally having claimed the right to be paid out of the proceeds of the sale of the property, precluded his right in the alternative to be given the improvements and allowed to remove same from the lot.
"Second, having permitted the property (house) to sell with the lot (and claiming no interest in the lot), John Smith lost the right to claim the house and to remove it, therefore, this alternative plea passed out of the case.
"Third, the case then stood with only the issue of the right of John Smith to be paid the value of his house, or the proceeds of the sale thereof out of the sale made by the sheriff, and he having lost this right by not having the property separately appraised, so that he could recover his pro rata part of the sale of the whole.
"Conceding arguendo that John Smith had the right to be paid the proceeds of the sale of the house, then his right was a privilege on the house. He laid no claim to the lot and made no claim to the proceeds of the sale of the lot, and, conceding arguendo that he was entitled to the proceeds of the sale of the house (which he was not) there is no way of telling what the house brought at the sheriff's sale or what proportion of the sale can be attributed to the house. Civil Code, Article 3228. In other words, plaintiff had a vendor's lien on the lot as fixed by the judgment, and *Page 92 
none on the house is claimed by Smith, therefore, we have a claim against the land by Mrs. Atkins and a claim against the house by Mr. Smith, and the property was seized and sold together, in globo, therefore, —
" 'Land and the buildings thereon, if subject to distinct privileges in favor of different creditors, must be separately appraised and the creditors paid according to their respective appraisements.' Cordeville v. Hosmer, 16 La. 590; McDonough v. Le Roy, 1 Rob. 173.
" 'The right to be paid by preference out of property or its proceeds, is nothing else but a first privilege in said property or proceeds.' Cleveland [Steel] Co. v. [Joe] Kaufman [Co.], 155 La. [529] 530 [99 So. 428, 429].
"However, plaintiff claims that he was entitled to proceed with the trial of his opposition under the provisions of Article 400 of the Code of Practice. However, this Article is not the one that is applicable to the issues presently before the Court. Articles 398 and 400 are applicable to cases where the claim of the intervenor is solely the ownership of the property, but here there was no attempt by plaintiff to arrest the sale by injunction or otherwise, but this main ground of complaint in the first instance, and the only ground at the trial of the opposition, was one claiming to be paid the proceeds of the sale by preference to that of Mrs. Atkins, therefore, his complaint is governed by Code of Practice, 401, hence,
"For the reasons assigned, the application for rehearing and new trial is overruled."
Third opponent perfected an appeal to this Court.
In passing on the case we said:
"Under the allegations of the petition, which cannot be enlarged by any evidence offered on confirmation of default, it is clear that Mrs. Atkins has never parted with title to Lot 18, Block 'C' of the 'Pine Grove Addition to the City of Shreveport. It was at the time of suit in her name. She does not allege that a deed translative of property had ever been executed to Willie V. Smith, therefore, Mrs. Atkins could not, under any theory of law, have a vendor's lien on her own property and have it sold to pay such a frivolous and imaginary lien. As far as title to the lot was concerned, she did not and could not have any better title to it after purchasing it at such a sale than she already had and certainly any third person who might have attempted to purchase the lot as the property of Willie V. Smith, who had no title to it, could not have received a good title.
"It is clear, to our minds, that the judgment of the lower court, insofar as it recognizes Mrs. Atkins' vendor's lien upon Lot 18, Block 'C' of Pine Grove Addition to the City of Shreveport, together with buildings and improvements thereon, and ordering it sold to satisfy that vendor's lien and privilege is erroneous and must be reversed. What other rights Mrs. Atkins might have against Willie V. Smith can be shown only by the contract which was lost with the record. The case, therefore, will have to be remanded to have the original or a true copy of the contract sued on supplied and the case returned to this court.
"The claim of Intervenor and Third Opponent is based upon the judgment of the lower court in the case of Mrs. Atkins v. Willie V. Smith and if that judgment is erroneous, as we have found it is, there is nothing left to adjudge in the Intervention and Third Opposition of John Smith. His claim will therefore be dismissed as of non-suit."
The Supreme Court granted a writ of certiorari and review in the case and, after hearing the same, remanded it to this Court for the purpose of passing on the Third Opposition of John Smith. 204 La. 468, 15 So.2d 855, 858. Our decision on the appeal to this Court by Willie V. Smith was not disturbed and has now become final. The Supreme Court in its opinion said: "Since we have arrived at the conclusion that the third opposition is in no way dependent on the outcome of the original suit between plaintiff and the defendant, the demand raised by the third opposition should have been passed on by the Court of Appeal."
[2] While the case was pending in the Supreme Court, John Smith died and his wife, Willie V. Smith, individually and as tutrix for his two grandchildren, Johnnie Mell Jones and Berdie L. Jones, were made parties third opponents. The Supreme Court's opinion was devoted almost entirely to pointing out the difference between an intervention and third opposition. The rule of law that a third opposition shall be considered as a separate demand, distinct from the suit in which the order was granted, *Page 93 
and that his demand in no way depends upon the outcome of the original suit between plaintiff and defendant, is so well founded in our law until it is no longer questioned by anyone. We did not overlook this principle of law in arriving at our former opinion, but we apparently did not clearly express in that opinion the reasons for it.
[3-5] Third opponent erected on the lot on which a contract to buy had been executed in the name of his wife a house which he and his wife occupied as a home at the time the vendor in the contract to sell secured a judgment against his wife and authorizing the house and lot to be sold to satisfy the judgment. Third opponent came into this case solely because of the expected sale. It cannot be denied, under the law of this State, that when the contract of sale was executed in the name of third opponent's wife, with no allegation or proof in the record that she acquired the contract with her separate paraphernal funds, that the contract became a part of the community of acquets and gains existing between John Smith, third opponent, and his wife, Willie V. Smith. Neither can it be denied under our law with no evidence to show the contrary, that when John Smith erected a house on the lot, possession of which was acquired under the contract of sale, the house also became a part of the community of acquets and gains existing between them. The community therefore owned the house and the contract to sell the lot upon which it was a part, and Mrs. Atkins was the title owner of the lot and, therefore, any rights Mrs. Atkins had under the contract to sell applied to the house as well as to the lot. When the house and lot were sold in globo and Mrs. Atkins secured a deed to them from the sheriff, we found that she had not acquired any additional title. In other words, the sheriff's sale was not made of property belonging to Mrs. Atkins' debtors, but of property owned at the time by Mrs. Atkins, and since she had legal title to the property before the sale, she acquired nothing by virtue of the sale. After the sale had taken place, Mrs. Atkins was still the record title holder of the property and the community of acquets and gains existing between John Smith and Willie V. Smith was still the owner of the contract to sell the property.
[6] The erroneous judgment against Willie V. Smith, which we reversed and has now become final, and the sale of the property thereunder did not change in any manner the status of the property as it existed before the suit and the illegal sale thereunder. Therefore, since all grounds upon which third opponent's demands were based no longer exist, we fail to see where there is anything left to base a judgment on in favor of third opponent. A different situation might have confronted us if some third person had purchased the property at sheriff's sale, but that did not occur.
[7] Third opponent, as head and master of the community existing between him and Willie V. Smith, had the same rights under the contract of sale after our former decision as he had before the suit was filed against Willie V. Smith. John Smith's death has in no manner changed the legal aspects of the case.
The demands of third opponent will therefore be rejected and the judgment of the lower Court is affirmed.